**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Leonard Brandt,

Plaintiff,

v.

Civil No. 01-05 (RHK/SRN)

**MEMORANDUM OPINION AND ORDER**

MIT Development Corporation, Home Diagnostics, Inc., George H. Holley, and the Estate of Robert J. Salem,

Defendants.

---

Terrence J. Fleming and Kim Ruckdashel-Haley, Lindquist & Vennum, Minneapolis, Minnesota, for Plaintiff.

Perry M. Wilson, III and S. Steven Prince, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota, for Defendants MIT Development Corporation, Home Diagnostics, Inc., and George H. Holley

Richard G. Mark and Julie H. Firestone, Briggs & Morgan, Minneapolis, Minnesota, for Defendant the Estate of Robert J. Salem.

---

**Introduction**

Plaintiff Leonard Brandt claims that he negotiated a consulting agreement with Defendants George Holley and the late Robert Salem pursuant to which Brandt would be compensated for providing business and financial planning services on behalf of Defendants MIT Development Corporation ("MIT") and Home Diagnostics, Inc. ("HDI"), and would be entitled to receive a percentage of any appreciation in the value of those



SEP 20 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

companies. Brandt further contends that, from sometime in 1993 through 1997, he provided financial and business consultant services from Minnesota for MIT and HDI. Brandt brought suit against the corporate and individual defendants asserting claims for breach of contract and unjust enrichment.

Before the Court are motions brought by two sets of defendants: the Estate of Robert J. Salem, on the one hand, and MIT, HDI, and Holley, on the other. Each motion seeks to dismiss Brandt's complaint for lack of personal jurisdiction and improper venue or, alternatively, to transfer this matter to Connecticut. For the reasons set forth below, the Court will grant the Estate of Salem's motion to dismiss on the grounds of lack of personal jurisdiction and will grant the remaining defendants' motion to transfer venue.

## Background

### I. The Parties

Until October 1999, MIT was a Delaware corporation having its principal place of business in Connecticut and engaged in the research and development of blood glucose monitoring systems and equipment. (Holley Dep. at 8; June 28, 2001 Aff. of Leonard Brandt ("June 28 Brandt Aff.") ¶ 5.) George Holley formed MIT in 1969. (Holley Dep. at 8.) After approximately 1972, he and Robert Salem each owned 50% of MIT's stock. (Id. at 10.) In October 1999, MIT was acquired by HDI, another medical device company in which both Holley and Salem had an ownership interest. (Id. at 9.) HDI is a Delaware corporation having its principal place of business in Florida. (Id.) HDI

manufactures and distributes home testing systems for diabetes and maintains a research and development facility in Connecticut.

Salem died in December 1999. (Aff. of Judy Salem, ¶ 2.) From 1972 until his death, Salem was a resident of Connecticut. (Id. ¶ 3.) In the brief time between MIT's acquisition by HDI and Salem's death, Salem was a director and major shareholder of HDI. Holley, a resident of Connecticut, is presently the CEO and chairman of the board of directors of HDI and owns approximately 23% of HDI's stock. (Holley Dep. at 7, 9-10.)

In the late 1980s and early 1990s, Brandt was employed by Norwest Venture Capital, a Minnesota-based venture capital management firm. (June 28 Brandt Aff. ¶ 2.) Two of Norwest Venture Capital's managed investment funds – Norwest Growth Fund and Norwest Equity Partners – became shareholders of HDI. (Id.) Brandt first met Holley and Salem in 1989 or 1990, when he served on HDI's board of directors with Salem and Holley, participating in board meetings held in HDI's New Jersey offices. (Holley Dep. at 11-13; June 28 Brandt Aff. ¶ 2.) Until July of 2000, Leonard Brandt resided in Minnesota.

## II. The Relationship between the Plaintiff and the Defendants

In July 1993, HDI encountered financial difficulties, and Holley contacted Brandt

in Minnesota seeking advice regarding HDI's financial problems.[1] (Holley Dep. at 15-16.) Holley became Brandt's "primary contact" with respect to the work that Brandt would perform for HDI and MIT. (Holley Dep. at 27; June 28 Brandt Aff. ¶ 5.) Holley purportedly told Brandt that Salem had withdrawn from active involvement with HDI and MIT due to health concerns, but that Holley kept Salem informed of the status of MIT and HDI's activities. (June 28 Brandt Aff. ¶ 5.) Brandt traveled to New York and New Jersey in 1993 to meet with Holley and discuss issues concerning both HDI and MIT. (Holey Dep. at 16.)

In November 1993, Brandt sent a proposed compensation agreement to Holley that called for Brandt to receive ten percent of the proceeds received by MIT, a five to ten percent ownership interest in MIT, a small retainer from HDI and an "upside carried interest" at a rate of twenty to twenty-five percent.[2] (April 24, 2001 Aff. of Leonard Brandt ("April 24 Brandt Aff.") Ex. A.) Salem agreed that HDI and MIT needed financial advice, but objected to the level of participation Brandt sought in all of MIT's interests. (Holley Dep. at 98-99; June 28 Brandt Aff. ¶ 8.)

On January 18, 1994, Holley sent to Brandt in Minnesota a letter outlining what

---

[1] It is unclear whether, at this time, Brandt was still a member of the board of directors for HDI.

[2] Although Brandt avers that he provided services to Holley and Salem, individually, as well as to MIT and HDI, his compensation proposal sought no compensation from the individual defendants.

Holley understood Brandt's request for compensation to be. (Holley Dep. at 102-03.) Holley subsequently sent Brandt a duplicate letter that included notes, handwritten by Holley, reflecting Holley's initial reaction to the points of Brandt's proposal. (April 24 Brandt Aff. Ex. B.)

On March 2, 1994, Brandt sent a letter to Holley and Salem via facsimile from Minnesota which he claims sets forth the "understood terms of his compensation." (June 28 Brandt Aff. ¶ 10; April 24 Brandt Aff. Ex. C.) Brandt believes that Holley discussed Brandt's letter with Salem, made handwritten notations on that letter, and sent the letter back to Brandt by facsimile. (June 28 Brandt Aff. ¶ 10.)

## III. Brandt's Alleged Consulting Agreement and His Performance Thereunder

Brandt claims that the agreement he reached with MIT, HDI, and Messrs. Salem and Holley involved the following compensation terms:

> A monthly consulting fee of $2000, with the understanding that they would not be responsible for more than $1000 per month if HDI did not pay MIT under a management contract with MIT then in existence or in the process of being formed, which would reimburse MIT for Brandt's services; and
>
> Incentive compensation equal to ten percent (10%) of the value, interest, equity, collections, revenue and assets above $1,000,000 received from HDI by MIT; its affiliate company, Applied Sciences Corp. ("ASC"); and Messrs. Holley and Salem.

(April 24 Brandt Aff. ¶ 7.) Brandt asserts that he provided business and financial planning services on behalf of MIT and HDI from 1993 through 1997, and that most of those services were performed from Brandt's Minnesota address. (See June 28 Brandt

Aff. ¶ 11.) Brandt specifically avers that he received a number of projects from Holley and provided the following services to HDI and MIT:

- contacting potential investors, investment bankers, and other companies interested in "entering into a relationship" with HDI – these efforts included contacts in Minnesota with Minnesota-based persons and companies
- providing advice on leadership and shareholder management issues
- reviewing and commenting on business plans and other financial documents
- reviewing HDI/MIT contracts
- conducting executive searches; and
- providing strategic competitive analysis and executive counsel and feedback

(April 24 Brandt Aff. ¶ 8.) Holley would typically meet Brandt during Brandt's travels to numerous places on the East Coast, including Florida, Massachusetts, New York, New Jersey and Connecticut.[3] (Holley Dep. at 22, 25-26.)

During the first year or two of Brandt's consulting relationship -- 1993 and 1994 -- Brandt had between daily and weekly communications with Holley. (Holley Dep. at 16.) Later, the communications between Brandt and Holley were less frequent, occurring approximately once a month. (Id. at 87.) Holley initiated about half of the telephone calls between himself and Brandt. (Id. at 17, 30.) During the first year, Brandt

---

[3] Holley testified that most of the services Brandt provided took place during these meetings on the East Coast. (Holley Dep. at 22, 25-26.) Holley further testified that the most important communications he had with Brandt occurred face-to-face in meetings, including meetings with potential investors and brokers. (Holley Dep. at 23-24.)

participated in approximately half of the telephone calls between himself and Holley from his home in Minnesota. (Id. at 17.)

HDI or MIT reimbursed Brandt for expenses he incurred relating to work done for HDI or MIT, including expenses incurred while traveling outside of Minnesota. (Holley Dep. at 36-43.) It appears that several of these payments were sent to Brandt's home in Minnesota. (Id. at 35-36.) Brandt also received a monthly stipend from MIT and/or HDI for several months. (Holley Dep. at 44-45.) It appears that Brandt stopped providing services to HDI and MIT in 1997 following several contentious meetings in Connecticut involving Salem, Holley, and Brandt, during which they disputed the scope and nature of the compensation Brandt was to receive. (See Holley Dep. at 93-94.)

## Analysis

### I. Dismissal for Lack of Personal Jurisdiction

#### A. Standard of Decision

In viewing the record before it on a motion to dismiss for lack of personal jurisdiction, the district court accepts as true the facts alleged in the complaint, see Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990), and construes those allegations, as well as reasonable inferences arising from them, in the light most favorable to the plaintiff. See Watlow Elec. Mfg. Co. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988). The district court is not confined to the allegations in the complaint, however, and may look beyond the pleadings to consider other evidence relevant to the jurisdictional

issue. See Palumbo v. Roberti, 834 F. Supp. 46, 50 (D. Mass. 1993). Once a non-resident defendant has challenged personal jurisdiction, the plaintiff bears the burden of establishing that sufficient contacts exist so that the district court's exercise of personal jurisdiction over the movant will comport with Due Process. See Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 611 (8th Cir. 1998). At this early stage of the litigation, however, the plaintiff need only make a prima facie showing of personal jurisdiction. See Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

Minnesota's long arm statutes extend jurisdiction to the maximum limit consistent with due process; therefore, the personal jurisdiction inquiry in Minnesota collapses into a single question of whether the requirements of due process are satisfied. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995) (citing Minnesota cases). The Supreme Court has held that personal jurisdiction over a nonresident is consistent with Due Process if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The following five factors are relevant in determining whether the exercise of personal jurisdiction satisfies constitutional due process requirements: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the contacts; (3) the source

and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience of the parties. Wessels, 65 F.3d at 1432. The Court begins by analyzing its personal jurisdiction over the Estate of Robert Salem, and then considers its jurisdiction over the persons of Holley, MIT and HDI (collectively, "the Holley Defendants").

**B. Personal Jurisdiction over the Estate of Robert Salem**

Under Minnesota's long-arm statute, where "the conduct of the decedent is the subject of the complaint, the decedent's foreign personal representative is subject to in personam jurisdiction under the long-arm statute if the decedent would be subject to jurisdiction if alive." V.H. v. Estate of Birnbaum, 543 N.W.2d 649, 655 (Minn. 1996). Brandt's principal argument for the existence of personal jurisdiction over the Estate of Salem is that Holley, who initiated numerous contacts with Brandt in Minnesota, was an agent for Salem and, therefore, Holley's contacts can be imputed to Salem. Before addressing Brandt's effort to "impute" Holley's contacts with Minnesota to Salem, the Court first analyzes the traditional forms of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction.

Where a non-resident defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities," that defendant is deemed to have "fair warning" that he could be haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

(1985) (quoting Helicopteros Nacionales de Colombia SA v. Hall, 466 U.S. 408, 414 (1984)). This is the exercise of specific personal jurisdiction over the defendant. The Estate argues that there would be no specific jurisdiction over Salem were he alive because he did not "purposely direct" any activities at Brandt in Minnesota out of which the injuries alleged in this litigation arise or to which the injuries relate. To the best of his widow's knowledge, Salem never contacted Brandt in Minnesota, and never met with Brandt in the state. (Aff. of Judy Salem ¶ 6.) Salem attended only one meeting with Brandt, and that occurred in Connecticut. Salem also appears to have been copied on correspondence that Holley sent to Brandt in Minnesota. "The use of interstate facilities such as telephone or mail is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995). If correspondence alone is inadequate to constitute "minimum contacts," being copied on such correspondence similarly cannot suffice. The Court concludes that there would have been no specific personal jurisdiction over Salem, were he alive.

Where the plaintiff's causes of action do not "arise out of or relate to the [non-resident defendant's] activities in the forum state, due process is not offended by a State's subjecting the [defendant] to its *in personam* jurisdiction where there are sufficient contacts between the State and the [defendant]." Helicopteros Nacionales, 466 U.S. at 414. This is the exercise of general personal jurisdiction over the defendant, and is

appropriate provided the non-resident's contacts with the forum are "continuous and systematic." Id. at 416. The Estate of Salem argues there could have been no general jurisdiction over Salem, were he alive. Salem lived in Connecticut for over twenty-five years, until his death. (Aff. of Judy Salem ¶ 3.) He owned no property or other assets in Minnesota. (Id. ¶ 4.) He never traveled to Minnesota, and did not conduct any personal business here. (Id. ¶ 5.) There is no evidence that Salem was involved in any legal actions in Minnesota.

Plaintiff does not disagree with the foregoing. Rather, Brandt argues that (1) Salem made frequent telephone calls to a company in Minnesota -- Chronimed -- regarding the sale of HDI products, and (2) Salem and Holley solicited Minnesota-based investors to obtain financing for HDI. The allegation regarding the solicitation of investors are vague as to time and fail to establish who (as between Holley and Salem) directed what actions toward Minnesota. Salem made the telephone calls to Chronimed as an employee of the corporate defendant. Brandt has come forward with no evidence that those calls, made on behalf of the corporation, can be attributed to Salem individually. "It is well established that jurisdiction may not be asserted against the officers of a corporation based upon jurisdiction over the corporation itself." Zhorne v. Swan, 700 F. Supp. 1037, 1038 (D. Minn. 1988) (Devitt, J.); see also Minnesota Min. & Mfg. Co. v. Rauh Rubber, 943 F. Supp. 1117, 1122 (D. Minn. 1996) (Tunheim, J.). Furthermore, mere use of the telephone to contact a customer in Minnesota is not

sufficient to constitute "continuous and systematic" contacts with Minnesota. See Bell Paper, 53 F.3d at 923. The Court concludes that there would have been no general personal jurisdiction over Salem, were he alive.

Finally, Brandt argues that there would be personal jurisdiction over Salem, were he alive, based on the alleged contacts of Holley, MIT and HDI in Minnesota. As noted above, a plaintiff cannot establish personal jurisdiction over a corporate officer based upon the corporation's contacts with the forum; the propriety of exercising personal jurisdiction over each defendant must be evaluated independently. See Rauh Rubber, 943 F. Supp. at 1122. Assuming that this Court has personal jurisdiction over HDI or MIT, plaintiff has failed to establish that such jurisdiction applies to Salem.

As for imputing Holley's contacts with Minnesota to Salem, Brandt's argument requires a determination that Holley was Salem's agent. Brandt cites to Minnesota's long-arm statute, which states that a court may exercise personal jurisdiction over any foreign corporation or non-resident individual "who, in person or through an agent, transacts any business within Minnesota, commits any act in Minnesota causing injury, or commits any act outside of Minnesota which causes injury in Minnesota." Minn. Stat. § 543.19, subd. 1. To impute the forum-related activities of an "agent" to his "principal," however, the plaintiff must make a prima facie showing that a principal-agent relationship existed. Thus, Brandt must show that (1) Salem manifested an intent that Holley act for him; (2) Holley accepted this undertaking; and (3) an understanding existed between

Salem and Holley that Salem controlled Holley's undertakings. See NFD, Inc. v. Stratford Leasing Co., 433 N.W.2d 905, 910 (Minn. Ct. App. 1988).

Even viewing the record in the light most favorable to Brandt, there is insufficient evidence to give rise to a reasonable inference that Salem controlled Holley's actions. The fact that Holley consulted with Salem concerning Brandt's proposed compensation agreements does not make him Salem's agent. Brandt also argues that Holley acted to benefit himself and Salem. Brandt has specifically averred, however, only that he provided services to HDI and MIT; Brandt has offered no comparable evidence that he provided services to Holley and Salem in their individual capacities. (See April 24 Brandt Aff. ¶ 8; June 28 Brandt Aff. ¶ 11.) The individuals benefitted, if at all, from Brandt's services derivatively through the corporations. The corporations are separate legal entities, and Brandt has not asked this Court to disregard their separate corporate existence and pierce the corporate veil. The Court concludes that, from the record presently before it, no reasonable jury could infer that Holley acted as Salem's agent.

Brandt has not established either general personal jurisdiction or specific personal jurisdiction over Salem and has failed to show that Holley's contacts with the forum state may be imputed to Salem. The Court further notes that Brandt has filed a parallel lawsuit against the Estate in Connecticut. Salem will be dismissed pursuant to Rule 12(b)(2).

### C. George Holley, MIT and HDI ("the Holley Defendants")

The Holley Defendants argue that their contacts with Minnesota do not

demonstrate the necessary quantity, quality, or scope to justify either general or specific personal jurisdiction in Minnesota. The Court considers each form of personal jurisdiction in turn.

### 1. General jurisdiction

#### a. MIT and Holley

The evidence presented by Plaintiff establishes that MIT had no sales representative in Minnesota and no contract with any company in Minnesota other than Chronimed (for whom MIT manufactured blood glucose meters). (Holley Dep. 120-21.) It did not buy goods or services from any company located in Minnesota; and it never solicited business in Minnesota. (Id.) At most, it appears that MIT's officers traveled to Minnesota to meet with representatives of Chronimed. (Id.) The Court concludes that those contacts are not sufficiently continuous and systematic to give MIT fair warning that it could be haled into court in Minnesota on a dispute that does not arise out of its contract with Chronimed.

Holley has never owned assets or real property in Minnesota, and he has not been involved in any legal proceedings in Minnesota. (Holley Dep. at 121-22.) He has traveled to Minnesota for business, in his capacity as an officer or employee of HDI and/or MIT. (Holley Dep. at 121-22.) There is no evidence regarding personal travel to Minnesota. Based on the record before it, the Court concludes that there is not sufficient evidence with respect to Holley from which a factfinder could find that his contacts with

Minnesota were "systematic and continuous."

**b. HDI**

The record before the Court regarding HDI is much more extensive. The parties do not dispute that HDI has no assets in Minnesota, and has not from at least 1996. (Schwartz Dep. at 62.) It has been involved in no legal proceedings in Minnesota before this case. (Id. at 17-18.) From at least 1998 to the present, HDI has had no vendors or suppliers in Minnesota. (Id. at 17.) Other factors, however, demonstrate continuous and systematic contacts with Minnesota.

Between 1993 and 1996, HDI employed a sales representative who was based in Minnesota and solicited the sale of HDI's blood glucose monitoring systems in Minnesota, North Dakota, and South Dakota. (Id. at 11-12.) In 2001, HDI again hired a sales representative who resides in Minnesota. (Id. at 10.) HDI maintains an Internet website, accessible from Minnesota, that includes toll-free telephone numbers for ordering products and obtaining technical support for its products. (Aff. of Kim Ruckdaschel-Haley, Ex. 6.) HDI earns revenues from sales to Minnesota customers; those sales account for approximately one tenth of one percent of HDI's business.[4] (Schwartz Dep. at 14.) Within the last few years, HDI has advertised in five or six national medical journals that circulate in Minnesota. (Id. at 63-64.) In 1998, the

---

[4] HDI recorded $5,647 in revenues from Minnesota during the last two months of 1998, $15,745 in 1999, $61,409 in 2000, and $8,638 during the first two months of 2001.

corporate officers and employees attended a conference in Minneapolis regarding diabetes. (Id.)

The Court is satisfied Brandt has come forward with sufficient evidence from which a factfinder could determine that HDI maintained the kind of continuous and systematic general business contacts with Minnesota to warrant this Court's exercise of personal jurisdiction over it. The Court now turns to the existence of specific personal jurisdiction over Holley and MIT.

**2. Specific jurisdiction**

Brandt has come forward with evidence of limited contacts between MIT and himself in Minnesota that bear a direct relationship to the claims before the Court. MIT sent reimbursement checks and monthly stipend checks to Brandt in connection with the alleged consulting agreement. Brandt sent reimbursement requests to MIT (and also HDI) by U.S. Mail and by facsimile, and also sent correspondence to Holley in his capacity as an officer and director of MIT (and also HDI). Holley, in his capacity as an officer and employee of MIT, telephoned Brandt and, on at least one occasion traveled to Minnesota. The Court is satisfied that there are sufficient minimum contacts between MIT and Minnesota relating to the claims presented by Brandt to warrant the exercise of personal jurisdiction over MIT.

With respect to Holley, Brandt has failed to identify specific contacts initiated by Holley to Brandt that were not part and parcel of Holley's role as an officer and

director of the corporate defendants. As discussed above, "jurisdiction may not be asserted against the officers of a corporation based upon jurisdiction over the corporation itself." Zhorne, 700 F. Supp. at 1038. The propriety of exercising personal jurisdiction over each defendant must be evaluated independently. See Rauh Rubber, 943 F. Supp. at 1122. The Court concludes that there is insufficient evidence to establish a prima facie case of personal jurisdiction over Holley.

The Holley Defendants argue that this case is like Jarvis & Sons, Inc. v. Freeport Shipbuilding & Marine Repair, Inc., in which the Eighth Circuit held that the "minimum contacts" asserted there were insufficient because

> [D]efendant has no office or agent or representative or employees in Minnesota; none of defendant's employees has ever visited Minnesota in connection with the contract; the contract was negotiated, executed and performed in Florida; all the modification work was performed, or, as alleged by plaintiff, not performed in breach of the contract, in Florida.

966 F.2d 1247, 1250 (8th Cir. 1992). The Holley Defendants rely on Jarvis to argue that, because the contract was negotiated outside of Minnesota and performance in Minnesota was not specifically contemplated, jurisdiction does not exist. The defendants further assert that all of Brandt's performance was to benefit out-of-state entities and that the only anticipated performance in Minnesota involved the Defendants paying Brandt.

The Holley Defendants' view of the contract at issue here is very different from Brandt's. Accepting Brandt's account as true for purposes of this motion, Jarvis is distinguishable on a number of grounds. In Jarvis, the Minnesota plaintiff initiated a

contractual relationship with the Florida defendant by soliciting a bid from the defendant. The work to be done on the plaintiff's boat was to be done in the defendant's Florida boatyard. By contrast, Brandt asserts that (1) Holley solicited his services by placing several telephone calls to Brandt in Minnesota, and (2) Brandt provided many services pursuant to the consulting agreement from his residence in Minnesota. In their reply brief, the Holley Defendants reiterate that Brandt rendered services on the East Coast, where targeted investors were supposedly located. That fact is not wholly inconsistent, however, with Brandt's assertion that his work included multiple contacts with Minnesota-based individuals and companies.[5] The Court cannot conclude, as a matter of law, that the alleged consulting agreement was not at least partially performed in Minnesota.

## II. Transfer to the District of Connecticut

Having concluded that there is personal jurisdiction over HDI and MIT, the Court considers their alternative motion for an order transferring this action to the District of Connecticut. Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to

---

[5] Brandt provides as an example his "several" phone calls and meetings with executives at Chronimed, a Minnesota-based customer of HDI. One of these meetings was attended by Holley as well. Pltf.'s Mem. Opp. Mot. to Dismiss at 8. Defendant concedes that this meeting occurred, but that it was related to a supply contract, beyond the scope of Brandt's duties for HDI/ MIT.

any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[6] Defendants contend that this action could have been brought in the District of Connecticut pursuant to 28 U.S.C. § 1391(a)(1) on the grounds that all of the defendants reside in that district. The Court concludes that Connecticut is a proper transferee court, and proceeds to consider whether HDI and MIT have met the standard for transfer of venue. "Transfer under § 1404(a) should not be freely granted. Rather, the party seeking to transfer bears a 'heavy burden' of showing that 'the balance of factors strongly favors the movant.'" Radisson Hotels Int'l v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (Kyle, J.) (emphasis in the original) (quoting United Mortg. Corp. v. Plaza Mortg. Corp., 853 F. Supp. 311, 315 (D. Minn. 1994) (Doty, J.)). The factors to be considered in determining whether to transfer venue are (1) the convenience of the

---

[6] The Holley Defendants also sought to dismiss the action on the grounds that venue is improper under § 1391(a)(1) because none of them resides in Minnesota. The federal venue statute provides that a case can be brought only in: 1) a district where any defendant resides, if all defendants reside in the same state; 2) a district where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the subject property is situated; or 3) a district where any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district where it can be brought. 28 U.S.C. § 1391(a); see Wisland v. Admiral Bev. Corp., 119 F.3d 733 (8th Cir. 1997), cert. denied, 522 U.S. 1112 (1998). Brandt argues that venue in proper in Minnesota because it is the district in which "a substantial part of the events or omissions giving rise to the claim occurred." To determine whether a "substantial part of the events" occurred in this district, the Court must focus on the relevant activities of the defendant in question. Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). Based on Brandt's claim that he performed substantial services in Minnesota for which he was not adequately compensated by the Holley Defendants (or by which the Holley Defendants were unjustly enriched), venue in Minnesota appears appropriate.

parties; (2) the convenience of the witnesses; and (3) the interests of justice. Terra Int'l Inc. v. Mississippi Chem Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S. 1029 (1997).

The convenience to the parties favors HDI and MIT. In his motion papers and at oral argument, Brandt has left ambiguous whether Minnesota is in fact his "home" forum. It appears from the record that Brandt has sold his home in Minnesota and relocated -- whether temporarily or permanently is unclear -- to California. Furthermore, the interests of justice and the convenience to the witnesses militate in favor of transferring this case to Connecticut. All of the corporate records for MIT and HDI are in Connecticut, as are many of the personal files of Mr. Holley and Mr. Salem, which will supposedly be crucial in the valuation of any potential remedy granted to Mr. Brandt. Mr. Holley is a Connecticut resident, as is Salem's widow, Judy Salem, who is both the personal representative of Salem's estate and the former office manager for MIT from 1989 through 1999. (Aff. of Judy Salem ¶ 2.) Having concluded that it lacks personal jurisdiction over the Estate of Salem and Holley, the interests of justice also dictate in favor of transferring this case to Connecticut. Brandt has begun a proceeding against the Estate in Connecticut that involves substantially the same claims. The cost of duplicative litigation in state and federal court is problematic and expensive enough; maintaining action in two geographically distant fora would add further to those costs. The Court concludes that transfer of the action against MIT and HDI to Connecticut is appropriate.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT**

1. Defendant the Estate of Robert J. Salem's Motion to Dismiss (Doc. No. 20) is **GRANTED** for lack of personal jurisdiction. The Complaint is hereby **DISMISSED WITHOUT PREJUDICE** as to the Estate of Robert J. Salem.

2. Defendants Home Diagnostics, Inc., MIT Development Corporation, and George Holley's Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. No. 9) is **GRANTED**. The Complaint as against Defendant George Holley is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. The Clerk of Court is directed to transfer this matter to the United States District Court for the District of Connecticut.

Dated: September 20, 2001

RICHARD H. KYLE
United States District Judge